IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
EASTERN DIVISION

FRIEDMAN & FRIEDMAN, LTD.,
an Illinois Corporation,

          **Plaintiff.**

vs.

TIM McCANDLESS INC., an Iowa
Corporation, and PAUL ROLOFF,

          **Defendants.**

No. C05-2007

RULING ON POST-TRIAL
MOTIONS

_____

**TABLE OF CONTENTS**

*I.*    *INTRODUCTION.* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*II.*    *RELEVANT FACTS.* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*III.*    *MOTION FOR NEW TRIAL OR IN THE ALTERNATIVE,*
       *AMENDMENT OF JUDGMENT.* . . . . . . . . . . . . . . . . . . . . . . . . . . 4
       *A.*    *Legal Standard to be Applied.* . . . . . . . . . . . . . . . . . . . . . 4
       *B.*    *Discussion.* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*IV.*    *BILL OF COSTS.* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*V.*    *MOTION FOR AMENDMENT OF JUDGMENT.* . . . . . . . . . . . . . . 9
       *A.*    *Is the Motion Timely Filed?* . . . . . . . . . . . . . . . . . . . . . . . . 10
       *B.*    *Is the Motion Meritorious?* . . . . . . . . . . . . . . . . . . . . . . . . . 12

*VI.*    *MOTION FOR FEES AND COSTS PURSUANT*
       *TO IOWA CODE § 668A.1(2)(b).* . . . . . . . . . . . . . . . . . . . . . . . . . 13

*VII.*    *MOTION FOR SANCTIONS.* . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16
       *A.*    *Relevant Facts.* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16
       *B.*    *Discussion.* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*VIII.*   *ORDER.* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

## I. INTRODUCTION

This matter comes before the Court on the Motion for New Trial or in the Alternative Amendment of Judgment (docket number 77) filed by the Defendants on April 3, 2008; the Request to Enter Revised Bill of Costs (docket number 87) filed by the Plaintiff on May 9, 2008; the Motion for Sanctions pursuant to Rule 11 (docket number 89) filed by Counterclaim Defendants Jeanne Enders and Arie Friedman on May 9, 2008; the Motion for Fees and Costs Pursuant to Iowa Code Section 668.1(2)(b) (docket number 91) filed by the Plaintiff on May 22, 2008; and the Motion for Amendment of Judgment (docket number 97) filed by the Plaintiff on June 9, 2008. Pursuant to Local Rule 7.c, the motions will be decided without oral argument.

## II. RELEVANT FACTS

In May 2002, Plaintiff Friedman & Friedman, Ltd. ("Friedman") purchased a Cessna P210 aircraft from Defendant Tim McCandless, Inc. ("McCandless"). Defendant Paul Roloff ("Roloff") is the sales manager at McCandless.

Friedman was dissatisfied with the condition of the airplane when it was delivered and filed a lawsuit in the Circuit Court of Cook County, Illinois. That action was dismissed on December 1, 2004, however, for lack of jurisdiction. On January 14, 2005, Friedman filed the instant action, claiming entitlement to recover damages for fraud and conspiracy to commit fraud (Count I), conversion (Count II), violation of the Illinois Consumer Fraud and Deceptive Trade Practices Act (Count III), promissory estoppel (Count IV), and breach of contract (Count V). Plaintiffs[1] amended their Complaint on August 12, 2005, to include a claim of intentional infliction of emotional distress

---

[1] At that time, the plaintiffs also included Jeanne Enders, Arie Friedman, Gail Tuler Friedman, and Eugene F. Friedman.

(Count VI). Defendants[2] answered and McCandless counterclaimed, alleging breach of contract, fraud, and abuse of process.

Meanwhile, on February 23, 2005, McCandless filed an action in the Iowa District Court for Black Hawk County, claiming damages for breach of contract, fraud, and abuse of process. That action was removed to the United States District Court for the Northern District of Iowa on June 27, 2005. *See Tim McCandless, Inc. v. Friedman & Friedman, Ltd., et al.,* case number 1:05-cv-00114-JSS. On November 15, 2005, the case initiated by McCandless was consolidated with the instant action for pretrial and trial purposes.

The consolidated actions came on for trial to a jury on March 24, 2008. Immediately prior to trial, Plaintiffs moved to dismiss Richard Baxter as a defendant. Plaintiffs also moved to dismiss the counts regarding promissory estoppel (Count IV) and intentional infliction of emotional distress (Count VI). Both motions were granted. McCandless moved to dismiss his counterclaim, which was also granted.

Following completion of Plaintiff's evidence, Defendants moved for a directed verdict. The Court dismissed all claims against Swieter Aircraft Services, Inc., and Irvin Swieter. The Court also directed a verdict in Defendants' favor on the conversion claim (Count II) and on the claim of violation of the Illinois Consumer Fraud Act (Count III). The claim of fraudulent misrepresentation (Count I) by McCandless and Roloff was submitted to the jury, together with a claim of breach of contract (Count V) against McCandless.

The jury returned a verdict in Friedman's favor on both claims, finding compensatory damages in the amount of $26,468.36. In addition, the jury found that the Defendants' conduct "constituted willful and wanton disregard for the rights or safety of another" and awarded punitive damages of $50,000. When asked "[w]as the conduct of Defendants directed specifically at Plaintiff," the jury responded "No."

---

[2] At that time, the defendants also included Swieter Aircraft Services, Inc., Irvin Swieter, and Richard Baxter.

Judgment was entered on March 28, 2008, pursuant to the jury's verdict. The Court determined that based on the jury's finding, a portion of the punitive damage award would be paid to Iowa's civil reparations trust fund.

> Pursuant to Iowa Code Section 668A.1(2)(b), after payment of all applicable costs and fees, twenty-five percent (25%) of the punitive damages will be paid to the Plaintiff, with remainder of the punitive damage award paid into a civil reparations trust fund administered by the State Court Administrator.

*See* Judgment in a Civil Case (docket number 75).

### III. MOTION FOR NEW TRIAL OR IN THE ALTERNATIVE, AMENDMENT OF JUDGMENT

Defendants seek a new trial pursuant to FEDERAL RULE OF CIVIL PROCEDURE 59(a). Alternatively, Defendants request that the Court amend the judgment pursuant to Rule 59(e). In support of their Motion, Defendants point to a perceived inconsistency in the jury's verdict. Defendants argue that the jury's finding that Defendants fraudulently misrepresented the condition of the aircraft is inconsistent with its finding that Defendants' conduct was not directed specifically at Friedman.

### A. Legal Standard to be Applied

Following a jury trial, the Court may grant a new trial "for any reason for which a new trial has heretofore been granted in an action at law in federal court." FED. R. CIV. P. 59(a)(1)(A). The grant of a motion for a new trial is appropriate only if "the verdict is against the weight of the evidence and allowing it to stand would result in a miscarriage of justice." *Murphy v. Missouri Dept. of Corrections*, 506 F.3d 1111, 1116 (8th Cir. 2007) (quoting *Jones v. TEK Industries, Inc.*, 319 F.3d 355, 358 (8th Cir. 2003)). *See also Foster v. Time Warner Entertainment Co.*, 250 F.3d 1189, 1197 (8th Cir. 2001) ("A new trial is only appropriate if the verdict was against the great weight of the evidence so as to constitute a miscarriage of justice.").

The Court has broad discretion in determining whether to grant or deny a motion to alter or amend judgment pursuant to Rule 59(e). *United States v. Metropolitan St. Louis*

*Sewer Dist.*, 440 F.3d 930, 933 (8th Cir. 2006). Rule 59(e) motions serve a limited function of correcting "manifest errors of law or fact or to present newly discovered evidence." *Id.* (quoting *Innovative Home Health Care v. P.T.-O.T. Assoc. of the Black Hills*, 141 F.3d 1284, 1286 (8th Cir. 1998)). "Such motions cannot be used to introduce new evidence, tender new legal theories, or raise arguments which could have been offered or raised prior to entry of judgment." *Id.*

## B. Discussion

According to Defendants, "[t]he inconsistency of the jury verdict is the basis for setting aside the punitive damages against these Defendants or, in the alternative, remanding the matter for a new trial and a proper consideration on those issues."[3] While it is not entirely clear, Defendants apparently argue that since the fraudulent misrepresentations were made to Friedman, the jury would be unable to conclude that "the conduct of Defendants [was not] directed specifically at [Friedman]."[4]

In support of their argument, Defendants cite *Thomas v. Stalter*, 20 F.3d 298 (7th Cir. 1994), and *Rosario v. Livaditis*, 963 F.2d 1013 (7th Cir. 1992). In both cases, the Seventh Circuit Court of Appeals reversed when the jury found liability, but failed to award any damages. *See Thomas*, 20 F.3d at 303 ("the jury's finding of liability is in irreconcilable conflict with its award of zero damages") and *Rosario*, 963 F.2d at 1020-1021 ("a finding of liability for violations of RICO is conspicuously inconsistent with an assessment of zero damages"). Defendants in the instant action argue that the jury's finding--that Defendants' conduct was not directed specifically at Friedman--is inconsistent or irreconcilable with its finding that Defendants made false representations to Friedman.

Where punitive damages are requested, the jury must answer two special interrogatories: first, whether the defendant's conduct constituted "willful and wanton

---

[3] *See* Response (docket number 79) filed by Defendants, ¶ 4 at 2.

[4] *See* Verdict Form (docket number 73), Question Number 6 at 3.

disregard for the rights and safety of another"; and second, "[w]hether the conduct of the defendant was directed specifically at the claimant." Iowa Code § 668A.1(1)(a) and (b).[5] Obviously, the Code anticipates that there will be cases where the defendant disregarded the rights or safety "of another," but the defendant's actions were not "directed specifically" at the plaintiff. The issue before the Court is whether the jury could conclude that this case is one of those circumstances.

At trial, Friedman claimed that Defendants falsely represented (1) that the aircraft was properly certified for flight, (2) that it was safe for flight, and (3) that it would have all of the promised accessories and components.[6] In finding that Friedman had proved its claim for fraudulent misrepresentation, the jury necessarily found that Defendants made one or more of the representations, the representation was false and material, Defendants knew the representation was false and intended to deceive Friedman, and Friedman acted in reliance on the truth of the representation. While the representations were made to Friedman, that does not preclude a finding by the jury that Defendants' conduct constituted a generalized disregard for the "rights or safety of another." That is, a jury could conclude that Defendants did not target Friedman in making false statements regarding the condition of the aircraft, but rather the representations were made generally to a prospective buyer. In that sense, Defendants' conduct was not "directed specifically" at Friedman.

---

[5] If the jury finds that a defendant's conduct was not directed specifically at the plaintiff, then a portion of the punitive damages is paid to the claimant, "with the remainder of the award to be ordered paid into a civil reparations trust fund administered by the state court administrator." Iowa Code § 668A.1(2)(b). The purpose of this provision is to divert a portion of the punitive damage award "to a public purpose" when the defendant's conduct is not directed specifically at the plaintiff. *Fernandez v. Curley*, 463 N.W.2d 5, 8 (Iowa 1990). "[A] plaintiff is a fortuitous beneficiary of a punitive damage award simply because there is no one else to receive it." *Shepherd Components, Inc. v. Brice Petrides-Donohue & Assoc., Inc.*, 473 N.W.2d 612, 619 (Iowa 1991).

[6] *See* Final Instruction No. 8 (docket number 70) at 11.

The Iowa appellate courts have affirmed a jury's finding that a defendant's conduct was not directed specifically at the plaintiff in a number of contexts: In *Shepherd Components, Inc. v. Brice Petrides-Donohue & Assoc., Inc.*, 473 N.W.2d 612 (Iowa 1991), an adjacent owner whose building partially collapsed during excavation of a sewer project brought suit against the excavation contractor. The jury awarded compensatory and punitive damages, but found that the defendant's conduct was not directed specifically at the plaintiff. The trial court concluded "that it could not rule as a matter of law that no evidence supported the jury's finding that [the defendant's] disregard for the rights of others was limited to plaintiff," and the Iowa Supreme Court agreed. *Id.* at 618. In *Sanford v. Meadow Gold Dairies, Inc.*, 534 N.W.2d 410 (Iowa 1995), the Court summarized its holding in *Shepherd* as follows: "Jury question by evidence from which jury could conclude the conduct might well be the same if a different plaintiff were involved." *Id.* at 413.

In *Sanford*, the plaintiff was fired for exercising his rights under the workers' compensation law. The jury awarded $500 in compensatory damages and $25,000 in punitive damages, but found that the defendant's conduct was not directed specifically at the plaintiff. 534 N.W.2d at 413. The plaintiff challenged the special verdict, claiming that there was no evidence to support it. The Iowa Supreme Court affirmed, however, concluding that it could not say as a matter of law that plaintiff "was singled out." *Id. See also Riggan v. Glass*, 734 N.W.2d 486 (Table), 2007 WL 911888 (Iowa App. 2007) at *6 (embezzlement of funds was "not directed specifically" at the account holder).

Under the cases set forth above, a jury can properly conclude that a defendant's conduct is not directed specifically at the plaintiff if the plaintiff was not "singled out" or if the defendant's conduct would have been substantially the same if "a different plaintiff" were involved.[7] There is no evidence in the record that Friedman was "singled out" or

---

[7] For a detailed criticism of the *Sanford-Shepherd* analysis, however, *see Chadima* (continued...)

that Defendants' conduct would have been different if a different plaintiff were involved. That is, a jury could conclude that while Defendants' conduct constituted willful and wanton disregard for the rights or safety of another, it was not directed specifically at Friedman. The Court does not find the jury's verdict to be inconsistent or irreconcilable. The Court cannot say that the verdict is against the weight of the evidence, or that allowing it to stand would result in a miscarriage of justice. *Murphy*, 506 F.3d at 1116. Accordingly, Defendants are not entitled to a new trial or amended judgment on this ground. *Schooley v. Orkin Extermination, Co., Inc.*, 502 F.3d 759, 767 (8th Cir. 2007). The Motion for New Trial or in the Alternative Amendment of Judgment (docket number 77) will be denied.

## IV. BILL OF COSTS

On March 28, 2008, pursuant to the jury's verdict, judgment entered in favor of Friedman and against McCandless and Roloff. On April 25, 2008, 28 days after the entry of judgment, Friedman filed a Request to Enter Bill of Costs (docket number 83) and Bill of Costs (docket number 83-2).[8] As prevailing party, Friedman requested that costs be assessed against Defendants pursuant to FEDERAL RULE OF CIVIL PROCEDURE 54 and 28 U.S.C. §§ 1821 and 1920. In its itemization, Friedman identified costs totaling $4,671.54, including $300 for clerk of court fees, $133.50 for service of summons fees,

---

[7](...continued)
*v. National Fidelity Life Insurance Co.*, 894 F. Supp. 1300 (S.D. Iowa 1995) (J. Bennett presiding). The Court found that the "different plaintiff" test articulated by the Iowa Supreme Court "to be an unduly narrow interpretation of section 668A.1(1)(b), and clearly at odds with the plain meaning of the language" found in the statute. *Id.* at 1308. Nonetheless, the Court concluded that it was compelled to follow the Iowa Supreme Court's interpretation of Section 668A.1(1)(b) and affirmed the decision of the jury. "A reasonable jury might have found that National Fidelity's conduct would have been the same if a different plaintiff's insurance claim were involved." *Id.* at 1309. This Court is similarly bound.

[8] According to the docket, the documents were filed on April 25, 2008, using the "wrong event" code and, therefore, were refiled on May 5, 2008. *See* docket number 86.

$765.87 for costs associated with preparing trial exhibits, and witness fees and expenses totaling $3,472.17.[9] On May 1, 2008, Defendants filed their Objections (docket number 84).

The procedure for taxation of costs is set forth in Local Rule 54. Of particular import in this case is Local Rule 54.a.1.A, which provides:

> Within 14 days after entry of judgment, a party entitled to recover costs must complete and file a form A.O. 133. **Failure to file the form by this deadline constitutes a waiver of the right to have costs taxed.**

Local Rule 54.a.1.A. (emphasis added)

Judgment was entered in this case on March 28, 2008. *See* Judgment in a Civil Case (docket number 75). Accordingly, pursuant to Local Rule 54.a.1.A, the deadline for filing a bill of costs was April 11, 2008. Friedman's Request to Enter Bill of Costs and Bill of Costs were not filed until April 25, 2008, some 14 days after the deadline. In fact, the Court notes that Friedman *never* filed form A.O. 133, as required by the Rules. Accordingly, the Court finds that Friedman's failure to file the form by the deadline constitutes a waiver of its right to have costs taxed. Therefore, Friedman's Revised Request to Enter Bill of Costs (docket number 87) will be denied.

## V. *MOTION FOR AMENDMENT OF JUDGMENT*

On June 9, 2008, Friedman filed its Motion for Amendment of Judgment (docket number 97). The Motion identifies what Friedman perceives as two "minor problems" with the judgment entered on March 28, 2008, and one "major problem" with the

---

[9] On May 9, 2008, Friedman filed a Request to Enter *Revised* Bill of Costs (docket number 87). In its Revised Bill of Costs, Friedman also seeks $40 per day for witness fees, raising the total claim to $4,913.54.

judgment. Defendants did not file a resistance or otherwise respond to Friedman's motion.[10]

Under the category of "minor problems," Friedman notes that in its Order for Judgment Entry (docket number 74), the Court directed that judgment enter against Defendants, jointly and severally, while in the judgment entered by the Clerk of Court (docket number 75), judgment is entered against "defendant, jointly and severally." Friedman also suggests that the judgment should specifically identify McCandless and Roloff as the defendants against whom judgment is entered, in order to avoid any confusion with dismissed defendants.

The "major problem" identified by Friedman in his Motion for Amendment of Judgment is the omission in the Court's Order (docket number 74) or the Clerk's Judgment (docket number 75) of any award for interest. Friedman requests that interest be ordered; to accrue on the compensatory damages from the date the aircraft was delivered and on the punitive damages from the date that judgment was entered.

### A. Is the Motion Timely Filed?

Friedman's motion and supporting memorandum are silent regarding the Federal Rule of Civil Procedure upon which it relies. A motion to alter or amend a judgment pursuant to Rule 59(e) "must be filed no later than 10 days after the entry of the judgment." FED. R. CIV. P. 59(e). That time limit cannot be extended by the court. FED. R. CIV. P. 6(b)(2). Judgment in this case was entered on March 28, 2008. Friedman's motion to amend the judgment was filed on June 9, 2008, some 73 days later. Accordingly, Friedman's Motion for Amendment of Judgment would be untimely under Rule 59(e). The district court is without jurisdiction to consider an untimely Rule 59(e) motion. *Townsend v. Terminal Packaging Co.*, 853 F.2d 623, 624 (8th Cir. 1988).

---

[10] "If no timely resistance to a motion is filed, the motion may be granted without notice." Local Rule 7.f.

Presumably, Friedman may be relying on Rule 60(a), which permits the court to correct "a mistake arising from oversight or omission."

> The court may correct a clerical mistake or a mistake arising from oversight or omission whenever one is found in a judgment, order, or other part of the record.

FED. R. CIV. P. 60(a). Generally, however, the failure to include interest in a judgment is not the type of mistake covered by Rule 60(a). *See Hoffman v. Celebrezze*, 405 F.2d 833, 834 (8th Cir. 1969), and *Chicago & North Western Railway Co. v. Union Packing Co.*, 527 F.2d 592 (8th Cir. 1976) ("This circuit does not view the erroneous allowance or omission of prejudgment interest to be a clerical error within the purview of Rule 60(a)."). *But see, Benson v. Richardson*, 1990 WL 290145 (N.D. Iowa) at *1 ("The failure to include an award of interest to plaintiffs was the result of judicial oversight and omission. Under Rule 60(a), Fed. R. Civ. P., such an error may be corrected at any time by the court on its own motion.").

Finally, Friedman may be relying on FEDERAL RULES OF CIVIL PROCEDURE 60(b)(1) and (6), which permits the court to grant relief for "mistake" or "inadvertence."

> On motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding for the following reasons:
> (1)    mistake, inadvertence, surprise, or excusable neglect;
> . . .
> (6)    any other reason that justifies relief.

FED. R. CIV. P. 60(b)(1) and (6). A motion brought pursuant to Rule 60(b) is timely if "made within a reasonable time." FED. R. CIV. P. 60(c).

When a judgment fails to include an award of interest, better practice would call for the prevailing party to file, within 10 days following the entry of judgment, a motion to amend the judgment, pursuant to Rule 59(e). Nonetheless, a party may be entitled to relief under Rule 60(b). *Paddington Partners v. Bouchard*, 34 F.3d 1132, 1144 (2d Cir. 1994) ("A party may move for the addition of pre-decision interest to a judgment for a full year

11

under Rule 60-(b)(1), or within a 'reasonable time' under Rule 60(b)(6)."). The Court concludes that Friedman's motion is timely under Rule 60(b) and, therefore, it will proceed to the merits of the motion.

## B. Is the Motion Meritorious?

Initially, the Court finds that the "minor problems" described by Friedman should be corrected. That is, the judgment (docket number 75) should refer to "defendants"-- plural -- rather than "defendant." Also, to avoid any confusion, the judgment will be amended to specify that it is entered against Defendants Tim McCandless, Inc. and Paul Roloff.

The principal issue raised by Friedman's motion is whether it is entitled to pre-filing interest on the compensatory damages. State law governs prejudgment interest in a diversity action. *Berglund v. State Farm Mutual Automobile Ins. Co.*, 121 F.3d 1225, 1230 (8th Cir. 1997). Generally, interest on money judgments in Iowa accrues from the date of the commencement of the action. *See* Iowa Code Section 668.13. The statute does not govern in those situations, however, where Iowa case law has provided for interest prior to the filing of a petition. *Gosch v. Juelfs*, 701 N.W.2d 90, 92 (Iowa 2005).

> When, as here, a definite amount of recovery has been fixed
> by the trier of fact for a damage item shown to be complete at
> a particular time, interest should be allowed as to that item
> from the time that the damage was shown to be complete.

*Id.*

In this case, Friedman argues that its damages were "complete" when the aircraft was delivered. Defendants failed to file a resistance or otherwise respond to Friedman's argument. The gravamen of Friedman's Complaint is that Defendants delivered an aircraft in a defective condition. The Court concludes that the damages were complete, although the amount remained undetermined, when the aircraft was delivered. Therefore, the Court concludes that interest should accrue on the compensatory damages from the date the aircraft was delivered (May 15, 2002).

Federal law controls the award of post-judgment interest. *See* 28 U.S.C. § 1961(a) ("Interest shall be allowed on any money judgment in a civil case recovered in a district court."). Post-judgment interest accrues on the entire amount owed, including prejudgment interest. *Fuchs v. Lifetime Doors, Inc.*, 939 F.2d 1275, 1280 (5th Cir. 1991); *Quesinberry v. Life Ins. Co. of North America*, 987 F.2d 1017, 1031 (4th Cir. 1993).

The jury concluded that Friedman sustained compensatory damages in the amount of $26,468.36. As set forth above, the Court has concluded that the damages were "complete" when the aircraft was delivered on May 15, 2002 and, therefore, prejudgment interest will accrue from that date. The interest rate payable on judgments under Iowa law has varied monthly from May 15, 2002 (when the damages were complete) to March 28, 2008 (when judgment was entered).[11] The Court concludes that prejudgment interest should accrue at 4.05%. By the Court's calculation, interest on $26,468.36 at 4.05% from May 15, 2002 to March 28, 2008 is $6,290.84. Accordingly, the compensatory damages suffered by Friedman, plus prejudgment interest, total $32,759.20.

The judgment will be amended to reflect compensatory damages, including prejudgment interest, in the amount of $32,759.20. As previously ordered, judgment will also enter for punitive damages in the amount of $50,000. Post-judgment interest will accrue on both amounts from and after the date of entry of judgment (March 28, 2008), at the statutory rate set forth in 28 U.S.C. § 1961(a).

## VI. MOTION FOR FEES AND COSTS PURSUANT TO IOWA CODE § 668A.1(2)(b)

As noted above, the jury concluded by a preponderance of clear, convincing, and satisfactory evidence that the conduct of Defendants constituted a willful and wanton

---

[11] *See generally*, http://www.judicial.state.ia.us/Administration/Interest_on_ Judgments/ and Iowa Code § 668.13(3). On May 15, 2002, the applicable interest rate was 5.609% and on March 28, 2008, it was 4.05%. In between, it dipped as low as 3.1% and went as high as 7.22%.

disregard for the rights or safety of another.[12] The jury further concluded, however, that the conduct of Defendants was not directed specifically at Friedman.[13] Under these circumstances, the Iowa Code provides that a portion of the punitive damages, after the payment of costs and fees, will be paid into a civil reparations trust fund.

> [If the conduct of the defendant was not directed specifically at the claimant], after payment of all applicable costs and fees, an amount not to exceed twenty-five percent of the punitive or exemplary damages awarded may be ordered paid to the claimant, with the remainder of the award to be ordered paid into a civil reparations trust fund administered by the state court administrator.

Iowa Code § 668A.1(2)(b). In circumstances where a defendant's conduct is not directed specifically at the claimant, "this statute was designed to divert a portion of a resulting punitive damage award to a public purpose." *Fernandez v. Curley*, 463 N.W.2d 5, 7-8 (Iowa 1990).

As set forth in the statute, the distribution between the claimant and the civil reparations trust fund occurs "after payment of all applicable costs and fees." The word "fees" includes a plaintiff's reasonable attorney fees. *Id.* at 8. The attorney fees to be paid from the punitive damage award are limited to only those fees which are applicable to the procurement of the punitive damages. *Revere Transducers, Inc. v. Deere & Co.*, 637 N.W.2d 189, 190 (Iowa 2001). The term "costs" refers to "the reasonable costs of litigation specifically attributable to the punitive damage claim which are not otherwise assessed against the defendant in the cost judgment entered pursuant to section 625.1." *Fernandez, 463 N.W.2d* at 8. These costs include, but are not limited to, the non-taxable portion of deposition costs, and expert witness fees which exceed the amount which can be taxed as costs. *Id.*

---

[12] *See* Verdict Form (docket number 73) Question Number 4 at 2.

[13] *See* Verdict Form (docket number 73), Question Number 6 at 3.

The fighting issue in the instant action is the amount of costs and fees which are applicable to the procurement of the punitive damages. Friedman claims that the costs and fees are an eye-popping $295,331. That is, Friedman claims that the costs and fees subsume the punitive damage award, thereby leaving nothing for the civil reparations trust fund. The State of Iowa ex rel Civil Reparations Trust Fund proposes that Friedman's costs and fees be set at 35% of the gross recovery, or $17,500.

In *Fernandez*, the Court suggested that reasonable attorney fees applicable to the recovery of punitive damages could be measured by a reasonable contingent fee.

> The district court determined that the word "fees" included plaintiff's reasonable attorney fees applicable to the recovery of the punitive damage award. The court determined that this could be measured by a reasonable contingent fee agreement. We conclude that this interpretation comports with the intent of the legislation.

*Fernandez*, 463 N.W.2d at 8.[14] *See also Revere Transducers, Inc.*, 637 N.W.2d at 191 ("We believe it is clear under a reading of the statute and our *Fernandez* case that an agreed contingency fee is ordinarily the fee to be applied to both the compensatory--and punitive--damage awards.").

Plaintiff's counsel note that they were not operating under a contingency fee agreement. Plaintiff Friedman & Friedman, Ltd. is an Illinois corporation authorized to practice law in that state. Eugene Friedman and Gail Tuler Friedman are the principals and officers of the corporation, and apparently its only two employees. They also acted as counsel for the corporation in the prosecution of this action and were initially named as plaintiffs in their individual capacities. Friedman generally engages primarily in patent law and in its reply memorandum described itself as "a cut-rate law firm in Chicago operating

---

[14] Fernandez sought damages for injuries sustained in a motor vehicle accident, which commonly involve a contingent fee to be paid plaintiff's counsel, but the Court's opinion is silent regarding whether a contingent fee agreement actually existed.

out of an apartment condo and often referred to (by the undersigned) as 'a mom and pop shop.'"[15]

Under these circumstances, the Court concludes that it would frustrate the purpose of the statute to allow an essentially self-represented plaintiff to claim an exorbitant fee, thereby eliminating any portion of the punitive damage award to be paid to the civil reparations trust fund. After carefully considering all of the facts and circumstances, the Court concludes that Friedman should be awarded costs and fees equal to 35% of the gross punitive damages, or $17,500.

Section 668A.1(2)(b) provides that after payment of all applicable costs and fees, the court may award plaintiff "an amount not to exceed twenty-five percent" of the punitive damage award. "[T]he fractional percentage to be paid plaintiff is tied to the amount of punitive or exemplary damages actually awarded rather than the amount remaining after payment of fees and costs." *Fernandez*, 463 N.W.2d at 8. The Court concludes that Friedman should be awarded 25% of the gross punitive damages, or $12,500. The remainder of the punitive damage award--40% or $20,000--shall be paid into a civil reparations trust fund administered by the Iowa State Court Administrator.

## VII. MOTION FOR SANCTIONS

### A. Relevant Facts

Next, the Court considers the Motion for Sanctions (docket number 89) filed by Jeanne Enders and Arie Friedman. The movants request that the Court sanction McCandless and its attorneys[16] pursuant to FEDERAL RULE OF CIVIL PROCEDURE 11, ordering attorney fees and costs totaling $19,737.50.

---

[15] *See* Reply Memorandum (docket number 96) at 9.

[16] In their reply, the movants indicate that "[o]n reflection," they have concluded that sanctions should not be sought against Defendants' current counsel. *See* Reply Memorandum (docket number 93) at 4.

In May 2002, Friedman negotiated the purchase of a Cessna P210 aircraft from McCandless. Arie Friedman--the son of Eugene Friedman and Gail Tuler Friedman--played an active role in the acquisition of the aircraft. Arie Friedman located the aircraft, communicated with Roloff regarding the purchase of the aircraft, and accepted delivery of the aircraft. When the purchase was completed, Friedman initially placed title to the aircraft in the name of Jeanne Enders--an acquaintance living in Oregon. Friedman admits that the transfer of ownership to Enders was an (unsuccessful) attempt to avoid applicable Illinois taxes.

When the aircraft was determined to be defective, Friedman filed a lawsuit in the Circuit Court of Cook County, Illinois. Jeanne Enders was included as a plaintiff. That action was dismissed for lack of jurisdiction, however, on December 1, 2004. On January 14, 2005, Friedman brought the instant action, again including Jeanne Enders as a plaintiff.

On February 23, 2005, McCandless filed a Petition in the Iowa District Court for Black Hawk County, naming Friedman, Enders, and Arie Friedman as defendants. While the Petition is not a model of clarity, it alleges that Defendants "breached the terms of the contract giving Iowa courts exclusive jurisdiction" and "committed fraud in filing and attempting to perfect their Illinois lawsuit." McCandless claimed that "filing the Illinois lawsuit represents an abuse of process." The Black Hawk County action was subsequently removed to the United States District Court for the Northern District of Iowa on June 27, 2005, and was consolidated with the instant action on November 15, 2005. *See Tim McCandless, Inc. v. Friedman & Friedman, LTD, et al*, Case No. 1:05-cv-00114-JSS. At that time, McCandless was represented by attorney Gene Yagla.

On August 15, 2005, Defendants[17] filed an answer in the instant action and McCandless filed a counterclaim. The counterclaim is identical in all material respects to the Petition brought by McCandless in the Black Hawk County action.

On November 15, 2005, the Court ordered that Arie Friedman be dismissed as a defendant to the counterclaim.[18]

> The Complaint shows that Arie Friedman was not a party in the Illinois litigation. This is an insuperable bar to McCandless' recovery against him for breach of contract, fraud, and/or abuse of process based upon the filing of that suit.

*See* Order (docket number 25) at 2.[19] On the same date, however, the Court denied Enders' Motion to Dismiss the Counterclaim as it applied to her, noting that she "was a named plaintiff in the Illinois litigation, which form[s] the basis of McCandless' counterclaim." *See* Order (docket number 26) at 2.

On January 25, 2007, attorney Gene Yagla was permitted to withdraw as counsel for Defendants. Attorney Max Kirk filed an appearance on February 6, 2007.

Immediately before the commencement of trial, McCandless moved to dismiss its counterclaim. Also at that time, Friedman moved to dismiss Richard Baxter as a defendant. Defendants Swieter Aircraft Services, Inc., and Irvin Swieter were dismissed by the Court for lack of evidence following the completion of Friedman's evidence.

---

[17] At that time, the Defendants included Tim McCandless, Inc., Paul Roloff, Swieter Aircraft Services, Inc., Irvin Swieter, and Richard Baxter.

[18] The Motion to Dismiss was filed by Arie Friedman as a defendant in case number 05-cv-114. The Court's Order also refers, however, to Arie Friedman being dismissed "as a counterclaim defendant from this lawsuit." The Order granted Arie Friedman's Motion to Dismiss in case number 05-cv-114, but all parties apparently agreed that it was also intended to dismiss the counterclaim in case number 05-cv-2007.

[19] It should be noted that by this time the Plaintiffs had amended their Complaint and brought Arie Friedman into the instant action as a plaintiff. *See* Amended Complaint (docket number 16) filed on August 12, 2005.

### B. Discussion

FEDERAL RULE OF CIVIL PROCEDURE 11 prohibits the filing of a pleading "for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation," and further requires that any "factual contentions have evidentiary support." FED. R. CIV. P. 11(b)(1) and (3). If the Court finds that these requirements are violated, "the court may impose an appropriate sanction on any attorney, law firm, or party that violated the rule or is responsible for the violation." FED. R. CIV. P. 11(c)(1). "An attorney's decision to engage in frivolous litigation has consequences, among which is a sanction under Rule 11." *Charland v. Little Six, Inc.*, 112 F. Supp. 2d 858, 859 (D. Minn. 2000). "[T]he primary purpose of Rule 11 sanctions is to deter attorney and litigant misconduct, not to compensate the opposing party for all of its costs in defending [against a frivolous complaint]." *Kirk Capital Corp. v. Bailey*, 16 F.3d 1485, 1490 (8th Cir. 1994).

When litigation over the sale of the aircraft was initiated in the Circuit Court of Cook County, Illinois, the plaintiffs included Jeanne Enders. While Friedman now argues that Enders was "merely trying to do a favor" and never "had any true ownership interest in the aircraft," she nonetheless joined Friedman in suing Tim McCandless, Inc., Paul Roloff, Swieter Aircraft Services, Inc., Irvin Swieter, and Richard Baxter in the Illinois state court action. The record does not reflect the pleadings filed by Plaintiffs in that case, and the Court does not know the factual allegations or legal theories found in the Illinois action.

The Illinois state court action was dismissed on December 1, 2004. Approximately six weeks later, Friedman and Enders filed the instant action against the same five defendants. McCandless responded by filing an action in the Iowa District Court for Black Hawk County, alleging breach of contract, fraud, and abuse of process. In addition to Friedman and Enders, McCandless included Arie Friedman as a defendant in the Black

Hawk County action. The "facts" found by Judge James P. Henry, in his order dismissing the Illinois action, included:

> Plaintiffs entered into a contract to purchase a Cessna airplane from certain Defendants. The only resident of Illinois here is the Plaintiff law firm Friedman & Friedman, Ltd. For almost the entire period relevant to the complaint, the son of the owners of Plaintiff law firm, Arie Friedman, was the Plaintiffs' representative in this transaction.

*See* Memorandum Opinion and Order (docket number 1-3) filed in case number 05-cv-114.

After a motion to dismiss filed by the Defendants in the instant action was denied, Plaintiffs amended their Complaint to add Arie Friedman, Gail Tuler Friedman, and Eugene F. Friedman as additional plaintiffs. Defendants then filed a counterclaim, alleging the same things contained in the Black Hawk County action.

The Court concludes that Rule 11 sanctions should not be assessed against McCandless or its attorneys for the inclusion of Enders as a defendant in the Black Hawk County action (removed to this Court in case number 05-cv-114) or as a counterclaim defendant in the instant action. Enders elected to join as a plaintiff in the Illinois state action and elected to join again when the Complaint was filed in this case. Enders' subsequent motion to dismiss McCandless' claims against her was denied by the Court. While McCandless ultimately dismissed its counterclaim at the time of trial, that fact alone does not meet the standard for imposition of sanctions under Rule 11(b).

The claim for Rule 11 sanctions by Arie Friedman presents a closer question. Arie Friedman was not a plaintiff in the Illinois state action, nor was he initially a plaintiff in the instant action. As alleged by McCandless in the Black Hawk County Petition, however, Arie Friedman was "actively involved in the negotiations which lead to the sale of the subject aircraft by Tim McCandless, Inc." In addition, the Petition accurately notes that certain documents were signed by Arie Friedman and he executed a Certificate of Acceptance when the aircraft was delivered. The Petition further alleges that "Defendants fraudulently claimed that Arie Friedman was not an agent for the other Defendants." After

the claim was removed to this Court, however, Arie Friedman was dismissed as a defendant to the counterclaim. The Court concluded that since Arie Friedman was not a party in the Illinois litigation, it was an "insuperable bar" to McCandless' recovery against him.

As noted above, Arie Friedman voluntarily joined in the instant action when the Plaintiffs' Amended Complaint was filed on August 12, 2005. The Amended Complaint alleges, among other things, that the aircraft was sold "to Plaintiffs Enders and Friedman." It further alleges that "defendants McCandless, Roloff, Swieter Aircraft Services, Swieter and Baxter had conspired and agreed amongst themselves to make the false statements and representations" regarding the condition of the aircraft. While Defendants have not filed a motion for Rule 11 sanctions, Friedman voluntarily dismissed Baxter as a defendant at the time of trial and the Court concluded following the completion of Plaintiff's case that there was no evidence to support a claim against Swieter Aircraft Services, Inc., and Irvin Swieter. The claims of Jeanne Enders and Arie Friedman were also dismissed at the time of trial.

After considering all of the facts and circumstances, including the long and convoluted history of this case, the Court concludes that Jeanne Enders and Arie Friedman are not entitled to Rule 11 sanctions against McCandless or attorney Gene Yagla. Therefore, the Motion for Sanctions (docket number 89) will be denied.

### VIII. ORDER

IT IS THEREFORE ORDERED as follows:

1.    The Motion for New Trial or in the Alternative Amendment of Judgment (docket number 77) filed by Defendants on April 3, 2008, is hereby **DENIED**.

2.    The Revised Bill of Costs (docket number 87) filed by Plaintiff on May 9, 2008, is hereby **DENIED**.

3.    The Motion for Fees and Costs Pursuant to Iowa Code Section 668A.1(2)(b) (docket number 91) filed by the Plaintiff on May 22, 2008, is hereby **GRANTED** in part

and **DENIED** in part as follows: Plaintiff shall be awarded thirty-five percent (35%) of the gross punitive damages, or Seventeen Thousand Five Hundred Dollars ($17,500), representing costs and fees. Plaintiff shall be awarded an additional twenty-five percent (25%) of the gross punitive damages, or Twelve Thousand Five Hundred Dollars ($12,500), representing its share of the punitive damages under Section 668A.1(2)(b). The State of Iowa ex rel. Civil Reparations Trust Fund shall be awarded forty percent (40%) of the gross punitive damage award, or Twenty Thousand Dollars ($20,000), to be paid into a civil reparations trust fund administered by the Iowa State Court Administrator.

4.    The Motion for Amendment of Judgment (docket number 97) filed by Plaintiff on June 9, 2008, is hereby **GRANTED** in part and **DENIED** in part. The Judgment (docket number 75) previously entered on March 28, 2008, is hereby **AMENDED** as follows:

> Judgment shall enter for Plaintiff Friedman & Friedman, Ltd., and against Defendants Tim McCandless, Inc. and Paul Roloff, jointly and severally, for compensatory damages, including prejudgment interest, in the amount of Thirty-Two Thousand Seven Hundred Fifty-Nine Dollars twenty cents ($32,759.20). Post-judgment interest will accrue on that amount from and after March 28, 2008, at the statutory rate set forth in 28 U.S.C. § 1961(a).

> Judgment shall enter for Plaintiff Friedman & Friedman, Ltd., and against Defendants Tim McCandless, Inc. and Paul Roloff, jointly and severally, for punitive damages in the amount of Thirty Thousand Dollars ($30,000). Post-judgment interest will accrue on that amount from and after March 28, 2008, at the statutory rate set forth in 28 U.S.C. § 1961(a).

> Judgment shall enter for State of Iowa ex rel. Civil Reparations Trust Fund and against Defendants Tim McCandless, Inc. and Paul Roloff, jointly and severally, for punitive damages in the amount of Twenty Thousand Dollars ($20,000). Post-judgment interest will accrue on that amount

from and after March 28, 2008, at the statutory rate set forth
in 28 U.S.C. § 1961(a).

5.    The Motion for Sanctions (docket number 89) filed by Jeanne Enders and
Arie Friedman on May 9, 2008 is hereby **DENIED**.

6.    Any other motions pending in the instant action and not specifically addressed
above are hereby **DENIED**.

7.    The companion case, *Tim McCandless, Inc. v. Friedman & Friedman, Ltd.,*
*et al.,* case number 1:05-cv-00114-JSS is hereby **DISMISSED**.

DATED this 5th day of August, 2008.

_____
JON STUART SCOLES
United States Magistrate Judge
NORTHERN DISTRICT OF IOWA